**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Paula Jean Williams,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-20-00136-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff Paula Jean Williams's ("Plaintiff") appeal of her denial of social security disability benefits. Plaintiff argues that the Administrative Law Judge ("ALJ") erred by (1) rejecting the opinions of Williams's treating psychiatrist, Dr. Lauren Bonner, and physician's assistant, PA Martha Ellis; (2) rejecting Williams's symptom testimony; and (3) determining William's residual functional capacity without articulating any basis in this record. (Doc. 17 at 1–2).

## I. BACKGROUND

Plaintiff was born in April 1967, (Doc. 12-8 at 2), and holds at least a high school education (Doc. 12-3 at 38). In May of 2008, Plaintiff received an influenza vaccination that caused Guillain-Barre syndrome (GBS).[1] (Doc. 17 at 3). The GBS caused symptoms

[1] Guillain-Barre syndrome is "[a] rare autoimmune illness characterized by progressive, potentially fatal[,] ascending paralysis, with loss of motor reflexes, ataxia, and paresthesia." (Doc. 17 at 4 n.5 (citing *Taber's Cyclopedic Medial Dictionary* (Donald Venes ed., 22d ed. 2013)).

"limiting quality of life and normal daily activity," including "asthenia [lack or loss of strength; debility] and paresthesia [numbness, tingling, prickling, stinging, or burning] all over [Plaintiff's] body and extremities, [and] burning sensation in bilateral arms and feet." (*Id.* at 4). In the years since, the condition worsened. (*Id.* at 3–4). In addition to GBS symptoms, during the period at issue, Plaintiff sought treatment for severe migraine headaches; lumber degenerative disc disease;[2] and various mental disorders, including anxiety disorder, major depressive disorder, mood disorder, and post-traumatic stress disorder. (*Id* at 3).

Plaintiff filed for social security disability benefits in March 2016 for her disabilities beginning in March 2014. (*Id.* at 2). The ALJ denied her claim in November 2018, which Plaintiff now appeals. (*Id.* at 1; Doc. 12-3 at 40).

## II. LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial evidence means 'more than a mere scintilla' but 'less than a preponderance.' It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 750.

To determine whether substantial evidence supports the ALJ's decision, the court must review "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ is ultimately responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* Therefore, "where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Instead, "the Court's inquiry is

[2] Lumber degenerative disc disease is a "dehydration and shrinkage of the intervertebral discs that cushion the vertebral bodies of the spine." (Doc. 17-1 at 2 (quoting David A. Morton, III, *Medical Issues in Social Security Disability* § 1.04.1.a (2013)).

constrained to the reasons asserted by the ALJ and the evidence relied on in support of those reasons." *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**A. Definition of Disability**

For a claimant to qualify for social security disability benefits, she must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). This "physical or mental impairment" must be of such severity that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy." *Id.* § 423(d)(2)(A).

**B. The Five-Step Evaluation Process**

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2020); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *See Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* §

404.1522(b). Further, the impairment must either have lasted for "a continuous period of at least 12 months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. *Id.* If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" ("RFC") "is the most [she] can still do despite all [her] impairments, including those that are not severe, and any related symptoms." *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. *Id.* Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. *Id.* If the claimant cannot perform other work, she will be found disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b.

### C. The ALJ's Opinion

The ALJ found that Plaintiff had not engaged in substantial gainful activity from her "alleged onset date of March 28, 2014 through her date last insured of March 31, 2016" and suffered from severe impairments. (Doc. 12-3 at 32). At step three, the ALJ found that Plaintiff's "impairment or combination of impairments" did not meet or medically equal "the severity of one of the listed impairments" in the Social Security regulations that automatically result in a finding of disability. (*Id.* at 33).

Prior to moving on to step four, the ALJ conducted an RFC determination in light of the proffered testimony and objective medical evidence. (*Id.* at 35). The ALJ found that Plaintiff "had the residual capacity to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a)," with additional limitations. (*Id.*) The ALJ determined that Plaintiff, after sitting for forty-five minutes to one hour, would have to stand "for about 3-4 minutes for a brief stretch while remaining at the workstation." (*Id.*) The ALJ also found that Plaintiff could "climb ramps and stairs occasionally" but could not climb "ladders, ropes, or scaffolds." (*Id.*) Furthermore, Plaintiff could "balance, stoop, kneel, crouch, and crawl occasionally, and frequently handle and finger bilaterally." However, Plaintiff had to "avoid loud noise, extreme temperatures, and hazards, including moving machinery and unprotected heights." (*Id.*) She could "perform simple, routine tasks and have occasional interaction with co-workers and the public" but would require one absence per month. (*Id.*) At step four, the ALJ found that Plaintiff was "unable to perform any past relevant work." (*Id.* at 38).

Finally, the ALJ determined at step five that based on Plaintiff's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (*Id.*) Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.* at 39).

## III. DISCUSSION

### A. Treating Physician's and Physician Assistant's Opinions

Dr. Bonner, a psychiatrist, and Martha Ellis, a physician's assistant ("PA"), treated

Plaintiff. Dr. Bonner found that Plaintiff couldn't work more than eight hours a day and was moderately to severely impaired in her abilities to perform simple, work-related tasks. (Doc. 12-13 at 43–44). PA Martha Ellis found that Plaintiff had to alternate sitting and standing every forty-six to sixty minutes and suffered from pain, fatigue, and headaches that caused additional moderately severe limitations. (*Id.* at 47–48). The ALJ rejected both opinions because "they provide little to no support for their extreme sets of proposed limitations" and because "these opinions are inconsistent with the [evidence]." (*Id.* at 37). The Court now determines whether the ALJ provided adequate reasons for giving these opinions "little weight."

**1. Treating Psychiatrist**

An "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). For a treating physician, "[w]here a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." *Connett*, 340 F.3d at 874. However, the ALJ may favor the conflicting opinion of another examining physician over the treating physician "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ's considered the treating psychiatrist's opinion the state's experts' opinions. Based on the ALJ's finding that the treating psychiatrist's opinions proposed "extreme . . . limitations" and that the State's experts' opinions "[did] not go far enough" to account for Plaintiff's condition, the ALJ treated them as conflicting. (Doc. 12-3 at 37; *see also* Doc. 17 at 15). Because the expert opinions conflicted, the ALJ may reject Dr. Bonner's opinion by providing "specific, legitimate reasons for doing so that are based on

substantial evidence in the record." *Magallanes*, 881 F.2d at 751.

The ALJ provided two reasons for giving the psychiatrist's opinions "little weight": (1) she "provide[d] little to no support for [her] extreme sets of proposed limitations," and (2) her findings were "inconsistent with the evidentiary considerations . . . in the [ALJ's] assessment of the State medical consultants' opinions." (Doc. 12-3 at 37). The Court considers each in turn.

As to the first reason, the Court agrees that Dr. Bonner provided "little to no" evidence to support her findings; however, she indicated on a "check-off report" that she had reviewed the relevant records and reports as well as her own treatment notes. (Doc. 12-13 at 44). Plaintiff argues that the ALJ cannot require her to provide more reasoning (Doc. 17 at 15–16). However, although "an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports *that do not contain any explanation of the bases of their conclusions*." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (emphasis added) (citation omitted). The check-off report here identified the general documents on which the opinions were based but did not provide an *explanation* of their conclusions. (*See* Doc. 12-13 at 43–44). Therefore, this is a specific, legitimate reason to support giving Dr. Bonner's "little weight." (Doc. 12-3 at 37). However, that does not end the inquiry.

The ALJ also found that the treating physician's opinions were not supported by the record. She noted as follows:

> [T]here are significant pertinent abnormal findings, like tenderness and intermittently limited lumbar ROM. However, there is also a substantial body of pertinent normal findings, like generally normal strength and negative SLR during the period at issue. Lumbar imaging was no more than moderately abnormal. Her migraines are adequately controlled with medication, per treatment notes. Her obesity has generally been in the somewhat lower end of what could be considered obese. (All of this is as discussed above, with citations to the record.).

(Doc. 12-3 at 37).

Plaintiff argues that despite these reasons, "the ALJ failed to specify what medical evidence the ALJ believed was inconsistent with any of . . . Dr. Bonner's findings." (Doc. 17 at 15). The ALJ pointed to a "substantial body of pertinent normal findings," stating

these were not as "extreme" as noted by the treating physicians. (Doc. 12-3 at 37). However, none of the findings relate specifically to mental health. (*See id.*) Dr. Bonner is a psychiatrist tasked with treating Plaintiff's "mental situations [that] are compounded by her chronic symptoms secondary to her GBS." (Doc. 17 at 4–5 (quoting Doc. 12-8 at 33)). Although the quoted section may support giving "little weight" to a physician treating physical symptoms, they are not adequate to support the exclusion of a psychiatrist's opinion. Because the contradictions asserted by the ALJ point to no specific inconsistencies between Dr. Bonner's mental health findings and the record, this reason is not sufficient to support giving her opinions "little weight."

Because one of the ALJ's two reasons is erroneous, the Court must consider whether the first is sufficient to support giving Dr. Bonner's opinions "little weight." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). "[R]eviewing the ALJ's credibility determination where the ALJ provides specific reasons supporting [it] is a substantive analysis." *Id.* If there remains "'substantial evidence supporting the ALJ's conclusions on . . . credibility[,]' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,'" then it is harmless, and the ALJ's determination should be upheld. *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)) (alteration in the original).

Substantial evidence supports the ALJ's ultimate credibility determination of Dr. Bonner. Although Dr. Bonner's report stated that her opinions were based on her own "treatment notes, records from other providers, mental status examinations, [and] patient's response to treatment," (Doc. 12-3 at 44), it failed to identify *which* of the records supported her opinions or explain *why* they did so. Also, as noted earlier in the ALJ's opinion, Dr. Bonner's own treatment notes and records from other providers indicated that although Plaintiff suffered from depression and chronic pain, she had normal concentration, memory function, thought processes, and intellectual functioning. (Doc. 12-9 at 52–53, 58, 72). Therefore, the medical evidence seems to conflict with Dr. Bonner's report, which found severe and moderately severe limitations in Plaintiff's ability to follow instructions,

respond to supervision, and respond to customary work pressures. (Doc.12-13 at 43). Because the ALJ is allowed to reject an examining physician's opinion for the lack of an explanation, *Thomas*, 278 F.3d at 957, and the ALJ's ultimate credibility determination is supported by substantial evidence—the conflicting medical evidence—the ALJ did not err by giving Dr. Bonner's opinions "little weight."

**2. Treating PA**

In addition to treating physicians, "an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources,'" *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017), including physician's assistants. *Ruiz v. Colvin*, 638 Fed. App'x. 604, 606 (9th Cir. 2016). Although "those providers' opinions are not entitled to the same deference [as a treating physician], an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels*, 874 F.3d at 655.

The ALJ considered both the treating physician and the treating PA together in the analysis quoted above. (Doc. 12-3 at 37). Although Dr. Bonner was employed to treat Plaintiff's mental symptoms, PA Ellis provided treatment for her physical ailments. (*See* Doc. 12-8 at 152–62) The ALJ pointed to "generally normal strength and negative SLR," lumbar imaging, and successful migraine treatment as reasons to reject PA Ellis's "extreme" opinions. (Doc. 12-3 at 37). The ALJ found that her opinions conflicted with the "substantial body of pertinent normal findings" in the record, including those reproduced above. *Id.*

Plaintiff argues that the ALJ's reasons were deficient because they "did not include citations to the medical record or any specific information the ALJ believed undermined PA Ellis's ... assessments." (Doc. 17 at 15). However, this construction completely overlooks the last sentence of the ALJ's analysis on this issue, which states: "All of this is as discussed above, with citations to the record." (Doc. 12-3 at 37). The preceding page of the opinion gives extensive factual findings with citations to the record. (Doc. 12-3 at 36). For example, the ALJ provides support for the assertion that Plaintiff's migraines were

controlled by citing to her doctor's repeated observations that "[p]atient migraines still happen[,] but she is happy with where they are and wants to continue [her medication]." (*Id.* (citing Doc. 12-8 at 137)). The Court thus rejects Plaintiff's argument that the ALJ erred by not providing citations to the record.

Plaintiff also argues that the ALJ "usurp[ed] the role of doctors" by characterizing PA Ellis's opinions as "extreme," citing *Padilla v. Comm'r. of Soc. Sec.*, No. CV-17-02737-PHX-BSB, 2018 WL 4770807 (D. Ariz. Oct. 3, 2018). (Doc. 17 at 16). However, that case does not support the Plaintiff's contention; there, the court held that the ALJ had not adequately provided support for rejecting the treating physician's opinion. *Id.* at *6 (finding that the ALJ's characterization of the expert opinions as "extreme" was conclusory and had no specific support in the ALJ opinion). Nothing in *Padilla* suggests that an ALJ cannot characterize a medical opinion as "extreme" when the ALJ provides sufficient supporting evidence from the record as to why the ALJ rejects it. Moreover, an ALJ is allowed to put forth her own interpretation of the record, so long as she provides sufficient reasoning for rejecting the physicians' opinions. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("[The ALJ] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."). The ALJ did that here by pointing to the amount of "normal" findings in Plaintiff's medical records, including the reasons mentioned above. (Doc. 12-3 at 36–37). The ALJ did not "manufacture" evidence as asserted by Plaintiff, (Doc. 17 at 17 (emphasis omitted)), but drew a conclusion based on two years' worth of observations by various medical professionals. (Doc. 12-3 at 36–37). This is well within the ALJ's role to weigh the evidence. *Matney*, 981 F.2d at 1019.

Because the ALJ in this case provided germane reasons to give PA Ellis's opinions "little weight," Plaintiff's claim on this issue must fail.

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff next claims that the ALJ erred by rejecting her subjective symptom testimony. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d

995, 1014 (9th Cir. 2014). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). To satisfy this first step, "[t]he claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof[,] . . . [n]or must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). The claimant must only establish a reasonable inference of causation. *Id.*

If the claimant satisfies the first step, and the ALJ finds no affirmative evidence of malingering, *Garrison*, 759 F.3d at 1014, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Instead, the ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons[3] for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). To make specific findings, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

In this case, the ALJ made the following statement regarding Plaintiff's symptom testimony:

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the below alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Doc. 12-13 at 35). The ALJ lists the following medical evidence to discount Plaintiff's symptom testimony: normal coordination, strength, sensation, and reflexes; negative

[3] "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

straight leg raising during the period at issue; adequate grip; mild to moderate MRI results; satisfaction with migraine treatment; normal thought process and content; fair concentration and insight and judgment; and normal memory function.

The Court finds the ALJ's provided reasons adequately supported by the record. (*See* Doc. 12-8 at 6, 134, 139–40, 149; Doc. 12-9 at 4, 8, 24, 106). The Court also finds that this evidence provides clear and convincing reasons for discounting Plaintiff's testimony. Plaintiff testified that she suffers "limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others." (Doc. 12-3 at 35–36). However, as observed by the ALJ, Plaintiff was repeatedly noted to have normal strength and reflexes (*see, e.g.*, Doc. 12-8 at 6; Doc. 12-9 at 4, 14), as well as fair concentration and normal memory function, (*see, e.g.*, Doc. 12-8 at 90; Doc. 12-9 at 53, 58, 72, 90–91). Moreover, Plaintiff was noted to have normal range of motion and lumber movement throughout the period at issue. (Doc. 12-8 at 6; Doc. 12-9 at 4, 13–14). Because a large portion of the medical evidence seems to conflict with Plaintiff's account of her limitations, the ALJ did not err in finding the evidence "not entirely consistent with the claimant's allegations of disabling symptoms." (Doc. 12-3 at 36).

Plaintiff argues that the ALJ improperly applied a "much higher" standard than "what is required on the part of the claimant." (Doc. 17 at 19) (quoting *Lacy v. Comm'r. of Soc. Sec.*, No. CV-18-04117-PHX-SPL, 2020 WL 1285948, at *1 (D. Ariz. Mar. 18, 2020)). Plaintiff asserts that *Lacy* governs this case, and "the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Lacy*, 2020 WL 1285948, at *2 (quoting *Smolen*, 80 F.3d at 1282.). *Lacy* accurately reflects that Plaintiff must only put forth evidence that her impairment "could reasonably be expected to produce the pain or other symptoms alleged." *Smolen*, 80F.3d at 1282; *Lacy*, 2020 WL 1285948, at *2. The ALJ found that Plaintiff met

that standard here. (Doc. 12-13 at 35). However, the Ninth Circuit Court of Appeals has held that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Although Plaintiff need not *produce* evidence to corroborate the severity of her symptoms, *Smolen*, 80 F.3d at 1282, when evidence that *is* produced contradicts with Plaintiff's symptom testimony, the ALJ can use it as a sufficient reason to reject the testimony. *See*, *e.g.*, *Carmickle*, 533 F.3d at 1661; *Alto v. Saul*, 818 Fed. App'x. 734, 737 (9th Cir. 2020); *Everson v. Colvin*, 577 Fed. App'x. 743, 744 (9th Cir. 2014).

Here, Plaintiff testified that she had "limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, [and] stair climbing." (Doc. 12-3 at 36). The ALJ found that this testimony *contradicted* the medical evidence, which noted normal strength, reflexes, range of motion, and lumbar movement. (*Id.* at 35 ("[C]laimant's statements . . . are not entirely consistent with the medical evidence and other evidence in the record."). The same is true for Plaintiff's mental impairments: Plaintiff's testimony about her limitations in "memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others," (*Id.* at 36), was found to *conflict* with the medical evidence that indicated fair concentration and normal memory function. (*Id.*) These findings are factual determinations solely within the province of the ALJ. *Andrews*, 53 F.3d at 1039; *Morgan*, 169 F.3d at 599. Therefore, the ALJ did not err by rejecting Plaintiff's subjective testimony because of its inconsistency with the objective medical evidence.

Both parties agree, however, that inconsistency with the medical evidence cannot provide the only reason to discount Plaintiff's symptom testimony. (Doc. 17 at 20; Doc. 18 at 11).[4] The ALJ thus offers a second reason: Plaintiff's conflicting statements. (Doc. 12-3 at 36); *cf. Khanishian v. Astrue*, 238 Fed. App'x 250, 252–53 (9th Cir. 2007) (holding that inconsistent statements are "appropriate" to consider in a credibility determination).

---

[4] Because neither party disputes the standard, the Court assumes without deciding that this is a correct statement of the law.

Plaintiff testified that her migraines were severe enough to preclude her from working. (Doc. 12-3 at 107–08; *see id.* at 36). She recalled that her migraines were so painful that she'd "have to lie down [and] close the curtains" because of the "light sensitivity, sound sensitivity, and nausea," and that these instances lasted between one and two hours. (*Id.* at 118–19). The ALJ discounted this testimony because Plaintiff was "repeatedly noted to be happy and satisfied with the level of control [over her migraines] she obtains with medications." (Doc. 12-3 at 36). This observation has plenty of support in the record. (*See, e.g.*, Doc. 12-8 at 133; Doc. 12-9 at 129; Doc. 12-13 at 22).

Although Plaintiff argues that her testimony was consistent with her prior statements because she testified that she *was* satisfied with her treatment, (Doc 12-3 at 108), it was reasonable for the ALJ to find that someone with migraines as severe as those described by Plaintiff would not have repeatedly stated that she was satisfied with her treatments. "Where the evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Morgan*, 169 F.3d at 599. Therefore, the Court will not disturb the ALJ's conclusion regarding Plaintiff's migraine testimony.

Plaintiff's inconsistent statements, taken together with Plaintiff's testimony being inconsistent with the medical evidence, provide two clear and convincing reasons to discount Plaintiff's symptom testimony.[5] Therefore, the ALJ did not err on this ground.

### C. Residual Functional Capacity

The final claim of error raised in this appeal is that the ALJ's RFC determination was not supported by substantial evidence. (Doc. 17 at 23). A claimant's RFC is "based on all the relevant medical and other evidence in [the] case record," 20 C.F.R. § 404.1520(e),

---

[5] Plaintiff also takes issue with the ALJ's reliance on her childcare duties to discount the subjective symptom testimony. An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints. *Chiccino v. Berryhill*, No. 3:17-cv-05713-TLF, 2018 WL 3769084, at *6 (W.D. Wash. Aug. 9, 2018) (citing *Smolen*, 80 F.3d at 1284 & n.7; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Trevizo*, 871 F.3d at 682). However, even if the ALJ erred by considering Plaintiff's childcare activities, *see Trevizo*, 871 F.3d at 682, the other reasons stated by the ALJ are clear and convincing reasons to discount Plaintiff's testimony. Therefore, Plaintiff's claim must fail on this ground. *Carmickle*, 533 F.3d at 1162.

and represents "the most [a claimant] can still do despite [her] impairments." *Id.* § 404.1545(a)(1).

In this case, the ALJ rejected the opinions of all three treating physicians and physician's assistants and assigned the State's medical consultants' opinions "partial weight." (Doc. 12-3 at 37). It is not entirely clear the weight assigned to Plaintiff's subjective symptom testimony, but the Court assumes it to be minimal based on the ALJ's statement that it was "not entirely consistent with the medical evidence." (*Id.* at 35). Instead, the ALJ relied heavily on the medical evidence in the record to determine that Plaintiff's RFC was limited to "sedentary work" and required one day of absence per month. (*Id.* at 37). Plaintiff first claims that the ALJ erred because she "did not rely on any of the medical opinions in [the] record to determine" RFC. (Doc. 17 at 23). Plaintiff next argues that the ALJ's RFC determination "was inconsistent" with the vocational expert's testimony. (*Id.* at 23–24). The Court considers each in turn.

The Court first considers the ALJ's failure to rely on medical opinions in the record. As to Dr. Bonner's and PA Ellis's opinions, the Court has already decided that the ALJ did not err by giving little weight to their opinions. Likewise, the ALJ did not err by assigning the state experts' opinions "partial weight." (Doc. 12-3 at 37). Plaintiff asserts that the ALJ purported to assign these opinions partial weight but actually rejected them entirely. (Doc. 17 at 23). The Court is unpersuaded. The ALJ noted that the consultants provided for "significant exertional and postural limitations." (*Id.*) The ALJ also found, however, that "the consultants [did] not go far enough." (*Id.*) The ALJ, thus, did not adopt the consultants' opinions in full. But the ALJ never purported to do so. The ALJ's own language indicates the consultants were given *partial* weight. Therefore, the ALJ did not err by accepting *part* of their opinions—finding significant exertional and postural limitations—but rejecting their RFC determination of "light work." Because the ALJ is ultimately responsible for "resolving conflicts in medical testimony," *Andrews*, 53 F.3d at 1039, the ALJ did not err on this ground.

The ALJ found that Plaintiff could perform sedentary work and provided for one day of absence per month to accommodate "all needed absenteeism due either to her mental or her physical impairments." (Doc. 12-3 at 37). This finding was based in part on the vocational expert's testimony that someone with Plaintiff's condition could perform two jobs in the national economy: document preparer and addressing clerk. (Doc. 12-3 at 125). Plaintiff argues, and the Court agrees, that the ALJ did not entirely address the vocational expert's testimony—specifically his testimony that more than one absence in a ninety-day probationary period would "not . . . be acceptable." (*Id.* at 126). Such testimony indicates that if the jobs provided by the vocational expert would require a probationary period, then Plaintiff's limitations would preclude her from completing them. If that were the case, Plaintiff would be unable to perform a "significant number[] of jobs in the national economy"—making her disabled. *Sczepanski v. Saul*, 946 F.3d 152, 157–59 (2d Cir. 2020) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)); 20 C.F.R. § 404.1566(b).

The ALJ does not address this issue. Instead, the ALJ noted that "the vocational expert testified as to the impact of a sit/stand option and of absenteeism" and that because the "testimony was not inconsistent with the DOT [Dictionary of Occupational Titles]," the ALJ "accept[ed] those portions of his testimony." (Doc. 12-3 at 39). Despite purportedly "accepting" the vocational expert's testimony, the ALJ makes no mention of the probationary period. The Commissioner argues that the probationary period is irrelevant because the jobs Plaintiff could perform, per the vocational expert, would not necessarily need a probationary period. (Doc. 18 at 14). Citing 20 C.F.R. § 404.1568, the Commissioner argues that theses "unskilled jobs" could be learned in thirty days. (*Id.*) However, the regulation makes no mention of a probationary period—it simply states that "unskilled work" requires only thirty days to learn. 20 C.F.R. § 404.1568. The vocational expert did not testify as to whether a probationary period would be the same length of time as the learning period or whether the jobs provided would even require a probationary period. Without such guidance in the record, this Court cannot say how long a probationary period might last or if there would even be one. *See Mosher v. Saul*, No. 5:18cv109/EMT,

2019 WL 3779995, at *6 n.6 (N.D. Fa. Aug. 12, 2019) ("SVP levels do not categorize jobs as to whether they are entry-level or whether they have probationary periods.").

With nothing in the record addressing the length of the probationary period for a document preparer or address clerk, or whether one would be required, the Court cannot say that the RFC determination is supported by substantial evidence. Therefore, the ALJ erred on this ground.

**D. Remand**

Having found that the ALJ committed error by failing to address the vocational expert's testimony, the Court has discretion to remand the case for further development of the record or for an award of benefits. *Revels*, 874 F.3d at 668. For the Court to remand for an award of benefits, it must find the following:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d 995, 1020 (9th Cir. 2014). Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014), the Court finds that further administrative proceedings are necessary. Even if the vocational expert's testimony were "credited as true," the question stills remains whether the jobs Plaintiff can purportedly perform would require a probationary period. Thus, a remand for further proceedings is appropriate in this case. *See Sczepanski*, 946 F.3d at 161.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **VACATED**, and the case is **REMANDED** to the agency for further proceedings. The Clerk of the Court shall enter judgment accordingly.

Dated this 3rd day of December, 2020.

James A. Teilborg
Senior United States District Judge